UNITED STATES DISTRICT COURT
DISTRICT OF IDAHO

| | |
|---|---|
| PATRICK J. R.,<br><br>　　　Plaintiff,<br><br>vs.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>　　　Defendant. | Case No.: 4:22-cv-00255-BLW-REP<br><br>**REPORT AND RECOMMENDATION** |

Pending is Plaintiff Patrick J. R.'s Petition for Review (Dkt. 1), appealing the Social Security Administration's denial of his disability claim. This action is brought pursuant to 42 U.S.C. § 405(g). Having carefully considered the record and otherwise being fully advised, the Court enters the following Report and Recommendation.

## I. ADMINISTRATIVE PROCEEDINGS

On January 2, 2020 Plaintiff protectively filed a Title II application for a period of disability and disability insurance benefits, alleging disability beginning May 13, 2019. The claim was originally denied on May 5, 2020, and again on reconsideration on August 27, 2020. On September 28, 2020, Plaintiff filed a Request for Hearing before an Administrative Law Judge ("ALJ"). On May 4, 2021, ALJ Wynne O'Brien-Persons held an agreed-upon telephone hearing (owing to the COVID-19 Pandemic), at which time Plaintiff, appearing with his attorney Brad Parkinson, testified. Mark Schwager, an impartial vocational expert, also appeared and testified at the same hearing.

On May 26, 2021, the ALJ issued a decision denying Plaintiff's claim, finding that he was not disabled within the meaning of the Social Security Act. Plaintiff timely requested review from the Appeals Council. On April 22, 2022, the Appeals Council denied Plaintiff's

**REPORT AND RECOMMENDATION - 1**

Request for Review, making the ALJ's decision the final decision of the Commissioner of Social Security.

Having exhausted his administrative remedies, Plaintiff brings this case. He raises two points of error: (i) the ALJ failed to properly consider and adequately explain the opinions of Family Nurse Practitioner ("FNP-C") Kathleen Searle; and (ii) the ALJ improperly rejected Plaintiff's allegations of disabling symptomology. Pl.'s Brief at 1, 7-16 (Dkt. 12). According to Plaintiff, these errors combine to reflect that that the ALJ's decision is not supported by substantial evidence. *Id*. at 6, 12-13, 15-16. Plaintiff therefore requests that the Court either reverse the ALJ's decision and find that he is entitled to benefits, or remand the case for further proceedings. *Id*. at 16.

## II.  STANDARD OF REVIEW

To be upheld, the Commissioner's decision must be supported by substantial evidence and based on proper legal standards. 42 U.S.C. § 405(g); *Trevizo v. Berryhill*, 871 F.3d 664 (9th Cir. 2017). Findings as to any question of fact, if supported by substantial evidence, are conclusive. *See* 42 U.S.C. § 405(g). If there is substantial evidence to support the ALJ's factual decisions, they must be upheld, even when there is conflicting evidence. *See Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014).

"Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Ludwig v. Astrue*, 681 F.3d 1047, 1051 (9th Cir. 2012). The standard requires more than a scintilla but less than a preponderance. *Trevizo*, 871 F.3d at 674. It "does not mean a large or considerable amount of evidence." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

With respect to questions of fact, the Court is to review the record as a whole to decide whether it contains evidence that would allow a reasonable mind to accept the conclusions of the

**REPORT AND RECOMMENDATION - 2**

ALJ. *Richardson*, 402 U.S. at 401; *see also Ludwig*, 681 F.3d at 1051. The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Treichler*, 775 F.3d at 1098. Where the evidence is susceptible to more than one rational interpretation, the reviewing court must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record. *Ludwig*, 681 F.3d at 1051. In such cases, the reviewing court may not substitute its judgment or interpretation of the record for that of the ALJ. *Batson v. Comm'r of Soc. Sec.*, 359 F.3d 1190, 1196 (9th Cir. 2004).

The decision must be based on proper legal standards and will be reversed for legal error. *Zavalin v. Colvin*, 778 F.3d 842, 845 (9th Cir. 2015). Considerable weight is given to the ALJ's construction of the Social Security Act. *See Vernoff v. Astrue*, 568 F.3d 1102, 1105 (9th Cir. 2009). However, the Court "will not rubber-stamp an administrative decision that is inconsistent with the statutory mandate or that frustrates the congressional purpose underlying the statute." *Smith v. Heckler*, 820 F.2d 1093, 1094 (9th Cir. 1987).

### III.  REPORT

**A.      Sequential Process**

In evaluating the evidence presented at an administrative hearing, the ALJ must follow a sequential process in determining whether a person is disabled in general (20 C.F.R. §§ 404.1520, 416.920) – or continues to be disabled (20 C.F.R. §§ 404.1594, 416.994) – within the meaning of the Social Security Act.

The first step requires the ALJ to determine whether the claimant is engaged in substantial gainful activity ("SGA"). 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). SGA is work activity that is both substantial and gainful. 20 C.F.R. §§ 404.1572, 416.972. "Substantial work activity" is work activity that involves doing significant physical or mental activities. 20 C.F.R. §§ 404.1572(a), 416.972(a). "Gainful work activity" is work that is usually done for pay

or profit, whether or not a profit is realized. 20 C.F.R. §§ 404.1572(b), 416.972(b). If the claimant has engaged in SGA, disability benefits are denied regardless of his medical condition, age, education, and work experience. 20 C.F.R. §§ 404.1520(b), 416.920(b). If the claimant has not engaged in SGA, the analysis proceeds to the second step. Here, the ALJ found that Plaintiff has not engaged in SGA since May 13, 2019 (the alleged onset date). AR 15.

The second step requires the ALJ to determine whether the claimant has a medically determinable impairment, or combination of impairments, that is severe and meets the duration requirement. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or combination of impairments is "severe" within the meaning of the Social Security Act if it significantly limits an individual's physical or mental ability to perform basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). An impairment or combination of impairments is "not severe" if it does not significantly limit the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1522, 416.922. If the claimant does not have a severe medically determinable impairment or combination of impairments, disability benefits are denied. 20 C.F.R. §§ 404.1520(c), 416.920(c). Here, the ALJ found that Plaintiff has the following severe medically determinable impairments: "lumbar degenerative disc disease, cardiac premature ventricular contractions ("PVCs"), and psoriatic arthritis." AR 16-18.

The third step requires the ALJ to determine the medical severity of any impairments; that is, whether the claimant's impairments meet or equal a listed impairment under 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the answer is yes, the claimant is considered disabled under the Social Security Act and benefits are awarded. 20 C.F.R. §§ 404.1520(d), 416.920(d). If the claimant's impairments neither meet nor equal one of the listed impairments, the claimant's case cannot be resolved at step three and the evaluation proceeds to step four. 20 C.F.R. §§ 404.1520(e), 416.920(e). Here, the ALJ

**REPORT AND RECOMMENDATION - 4**

concluded that Plaintiff's above-listed medically determinable impairments, while severe, do not meet or medically equal, either singly or in combination, the criteria established for any of the qualifying impairments. AR 18.

The fourth step requires the ALJ to determine whether the claimant's residual functional capacity ("RFC") is sufficient for the claimant to perform past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). An individual's RFC is his ability to do physical and mental work activities on a sustained basis despite limitations from his impairments. 20 C.F.R. §§ 404.1545, 416.945. An individual's past relevant work is work he performed within the last 15 years, or 15 years prior to the date that disability must be established, if the work lasted long enough for the claimant to learn to do the job and be engaged in SGA. 20 C.F.R. §§ 404.1560(b), 404.1565, 416.960(b), 416.965. Here, the ALJ concluded:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except: He can stand and/or walk four hours in an eight-hour day and sit the remaining portion of the day. He can never climb ladders, ropes, or scaffolds. He can frequently balance. He can occasionally stoop, kneel, crouch, crawl, and climb ramps/stairs. He can frequently reach overhead, handle, and finger bilaterally. He can occasionally be exposed to vibrations and hazards. He will be off task approximately 8-9% of the workday.

AR 18-27.

In the fifth and final step, if it has been established that a claimant can no longer perform past relevant work because of his impairments, the burden shifts to the Commissioner to show that the claimant retains the ability to do alternate work and to demonstrate that such alternate work exists in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), 404.1520(f), 416.920(f); *see also Garrison v. Colvin*, 759 F.3d 995, 1011 (9th Cir. 2014). If the claimant can do such other work, he is not disabled; if the claimant cannot do other work and meets the duration requirement, he is disabled. Here, the ALJ found that Plaintiff

**REPORT AND RECOMMENDATION - 5**

was unable to perform any of his past relevant work, but was still capable of working full-time as an office helper, bench assembler, or electronics worker. AR 27-29. Based on these findings, the ALJ concluded that Plaintiff has not been under a disability from May 13, 2019 (the alleged onset date) through the date of the decision. AR 29.

**B.     Analysis**

      1.     <u>The ALJ Reasonably Considered the Medical Opinions from FNP-C Searle</u>

Plaintiff argues that the ALJ erred in rejecting the restrictions assessed by his primary caregiver, FNP-C Searle. Pl.'s Brief at 7-13 (Dkt. 12). In a May 6, 2021 "Physical Medical Source Statement" (the "Statement"), FNP-C Searle highlighted how Plaintiff's psoriatic arthritis contributes to certain functional limitations if he was placed in a competitive work situation, including: (i) sitting for only 30 minutes at a time (for a total of about four hours); (ii) standing for only 30 minutes at a time (for a total of about two hours); (iii) not using his hands or fingers more than 10% of the day, or reaching more than 5% of the day; (iv) being off task 25% or more of the day; and (v) needing to miss about four days per month. AR 561-563. The ALJ found these opinions unpersuasive, reasoning:

> I find [F]NP-C Searle's opined limitations unpersuasive. While she treated the claimant with injections in September 2020 and April 2021, the medical evidence shows the last time she actually examined the claimant was prior to the alleged onset date and two full years prior to the date she completed the form above. As a result, her opined limitations are inconstant with the medical evidence showing improvement with treatment from June 2019 forward, e.g., reduced severity in actual signs over time, fewer visits with Dr. Scoville in 2019 versus 2020 (i.e. four in six months versus two in a year), and no return visits to NP Terry Thompson for PVC related issues after January 2020.

AR 23 (internal citations omitted). The ALJ further explained how FNP-C Searle's opinions about Plaintiff's limitations are also unsupported by Plaintiff's most recent physical examination with Dr. Scoville in September 2020, which did not reflect the level of severity found in FNP-C Searle's April 2019 examination (which FNP-C Searle presumably based her Statement upon

**REPORT AND RECOMMENDATION - 6**

two years later).  AR 24 (internal citations omitted).  Plaintiff contends that the ALJ's justification for dismissing FNP-C Searle's Statement is inaccurate and therefore unsupported by substantial evidence.  Pl.'s Brief at 10-13 (Dkt. 12).  The Court disagrees.

Because this case was filed after March 17, 2017, the revised regulations governing the ALJ's evaluation of medical evidence apply.  *See* 20 C.F.R. § 404.1520c.  Under these regulations, the ALJ is no longer required to give deference to any medical opinion, including treating source opinions.  *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022); *see also* 20 C.F.R. § 404.1520c(a) ("We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources.").

Instead, the ALJ evaluates the "persuasiveness" of the opinions based on several factors.  *Id*.  These are: (i) supportability, (ii) consistency, (iii) relationship with the claimant, (iv) specialization, and (v) any "other factors that tend to support or contradict a medical opinion."  20 C.F.R. §§ 405.1520c(c)(1)-(5).  The ALJ's duty to articulate a rationale for each factor varies.  20 C.F.R. §§ 404.1520c(a)-(b).

Supportability and consistency are the most important factors, and the ALJ, therefore, must explain how both factors were considered.  *Woods*, 32 F.4th at 792; 20 C.F.R. § 404.1520c(b)(2).  The supportability factor looks inward at a medical opinion's bases; "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . ., the more persuasive the medical opinions . . . will be." 20 C.F.R. § 404.1520c(c)(1).  The consistency factor, on the other hand, looks outward, comparing the opinion to the other evidence in the record; "[t]he more consistent a medical opinion . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion . . . will be." 20 C.F.R. § 404.1520c(c)(2).

**REPORT AND RECOMMENDATION - 7**

The ALJ is only required to articulate findings on the remaining factors (treatment relationship, specialization, and any other factors) where "two or more medical opinions . . . about the same issue are both equally well-supported . . . and consistent with the record . . . but are not exactly the same." 20 C.F.R. §§ 404.1520c(b)(2)-(3).

Courts review the ALJ's persuasiveness determinations under these regulations using the substantial evidence standard. *See Woods*, 32 F.4th at 787 ("[A]n ALJ's decision, including the decision to discredit any medical opinion, must simply be supported by substantial evidence."). The ALJ's consideration of NP-C Searle's opinions satisfies this standard.

First, as to supportability, the ALJ criticized the opinions within FNP-C Searle's Statement because her historical clinical findings did not validate the stated limitations. AR 23. As the ALJ pointed out, FNP-C Searle only saw Plaintiff *twice* in the two years between the May 13, 2019 alleged onset date and the May 6, 2021 Statement: on September 11, 2020 (AR 550-552) and on April 19, 2021 (547-549). Importantly, neither of these visits involved Plaintiff's physical examination in a way that tracks the limitations referenced in the Statement. Rather, each dealt with Plaintiff receiving Depo-Medrol and/or Toradol injections for Plaintiff's arthritis. *Id*. Absent more fulsome and substantiating treatment notes, FNP-C Searle's opinions are left unsupported. *Batson*, 359 F.3d at 1195 n.3 (brief and conclusory report did not provide support for limitations assessed in the absence of objective medical evidence in the physician's treatment notes); *Woods*, 32 F.4th at 791-92 ("Supportability means the extent to which a medical source supports the medical opinion by explaining the 'relevant . . . objective medical evidence.'") (quoting 20 C.F.R. § 404.1520c(c)(1)).

Plaintiff counters that "these records confirm examinations, diagnoses, observations, and prescription medications consistent with NP-C Searle's [S]tatement on May 6, 2021 that she had been seeing Petitioner throughout the relevant period." Pl.'s Brief at 10 (Dkt. 12). But this

**REPORT AND RECOMMENDATION - 8**

argument misses the point. There is no dispute that Plaintiff suffers from the impairments that FNP-C Searle saw and treated Plaintiff for since 2017 – namely, psoriatic arthritis. AR 16. There is also no dispute that this impairment is painful and has more than a minimal effect on Plaintiff's ability to perform work-related activities. *Id*. However, this understood, severe impairment and related limitations do not *ipso facto* establish disability. *See Mullins v. Astrue*, 2012 WL 71708, at *6 (C.D. Cal. 2012) ("the existence of some pain does not constitute a disability if it does not prevent Plaintiff from working"); *see also Fair v. Brown*, 885 F.2d 597, 603 (9th Cir. 1989) (the social security program is "intended to provide benefits to people who are unable to work; awarding benefits in cases of nondisabling pain would expend the class of recipients far beyond that contemplated by the statute").

And contrary to Plaintiff's claim (Pl.'s Brief at 11-12 (Dkt. 12)), his treatment history with FNP-C Searle, without more, is not enough under the revised regulations. As stated above, the current standard for evaluating a medical opinion is simple persuasiveness, measured against an opinion's supportability and consistency, and generally independent of a provider's treatment relationship. 20 C.F.R. §§ 404.1520c(a),(b)(2)-(3); *see also Woods*, 32 F.4th at 792 ("[T]he ALJ no longer needs to make specific findings regarding these relationship factors."). Against *that* standard's supportability prong, there is nothing in FNP-C Searle's treatment notes since Plaintiff's alleged onset date that corroborates the Statement's debilitating limitations.

This is not to say that Plaintiff is able to work or even that FNP-C Searle's opinions about Plaintiff's limitations are at odds with her treatment notes. It simply highlights how FNP-C Searle's point-in-time opinions about Plaintiff's limitations are isolated and unsubstantiated. This speaks to the supportability of FNP-C Searle's opinions as they appear in the Statement – a factor that an ALJ properly considers when assessing the persuasiveness of a medical provider's opinion. *Supra*.

**REPORT AND RECOMMENDATION - 9**

Second, as to consistency, the ALJ contrasted FNP-C Searle's Statement with other medical evidence showing improvement over time. AR 23-24. Notably, this improvement followed FNP-C Searle's April 12, 2019 referral of Plaintiff to Craig Scoville, M.D., "for consultation and treatment." AR 328,[1] 488 (Plaintiff referenced as "New Patient" in Dr. Scoville's June 7, 2019). The ALJ described how, since being referred, Plaintiff steadily showed improvements in the severity of his symptoms. AR 23 (citing AR 472, 477-478, 481, 492, 542-543). To prove that point, the ALJ compared FNP-C Searle's April 12, 2019 treatment note with Dr. Scoville's September 30, 2020 treatment note, which reflected the following:

| **FNP-C Searle's April 12, 2019 Note** | **Dr. Scoville's September 30, 2020 Note** |
|---|---|
| Limited range of motion in both shoulders with discomfort. | Full bilateral shoulder range of motion with only mild discomfort and slightly painful arcs. |
| Limited range of motion in both elbows with synovitis. | Normal and full elbow range of motion with no synovitis bilaterally. |
| Limited range of motion in both wrists with tenderness. | Non-tender wrists with no synovitis bilaterally. |
| Limited range of motion in both hands with dactylitis and tenderness | Non-tender hands with no synovitis and good ranges of motion bilaterally. |
| Partially closed fist formation with discomfort. | Fully closed fist formations. |
| Flex to 110 degrees in both hips with discomfort. | Mild-to-moderate left hip/pelvis/low back discomfort with flex to 120 degrees bilaterally. |

---

[1] April 12, 2019 was also the last time FNP-C Searle examined Plaintiff before filling out the Statement. AR 326-328, 553-555.

**REPORT AND RECOMMENDATION - 10**

| | |
|---|---|
| Not able to reach knees to chest | Normal knee range of motion bilaterally without discomfort; knees nearly reach to chest. |
| Tender ankles bilaterally. | Slightly tender right Achilles. |
| Limited range of motion in both feet with dactylitis and tenderness. | Feet non-tender bilaterally. |
| Slow and antalgic gait. | Gets in and out of chair without assistance; and normal gait. |

AR 24 (*comparing* AR 327, *with* 542-543).  Plaintiff's more recent improvements, supported by more regular physical examinations by Dr. Scoville in the interim, reveal that FNP-C Searle's opinions about Plaintiff's limitations are both outdated[2] and inconsistent with the balance of the medical record.  *See Flores v. Colvin*, 546 F.App'x 638, 640 (9th Cir. 2013) (an ALJ properly rejected an older opinion in favor of a newer opinion that was based on "more detailed and comprehensive information" than was available to the doctor who issued the older opinion).  An ALJ may properly discount a medical provider's opinion when it is inconsistent with the overall record.  *Woods*, 32 F.4th at 792 ("Consistency means the extent to which a medical opinion is 'consistent . . . with the evidence from other medical sources and nonmedical sources in the claim.'") (quoting 20 C.F.R. § 404.1520c(c)(2)).

Without pointing to specific, contrary evidence in the record, Plaintiff responds that the ALJ effectively "play[ed] doctor" when crafting her RFC because (i) while his symptoms may

---

[2] On this point, the ALJ suggested that FNP-C Searle's Statement in 2021 more-or-less copied the treatment notes from the last time she examined Plaintiff – two years earlier, and before the alleged onset date.  AR 24 (ALJ stating: "[F]NP-C Searle's opined limitations are also unsupported by the claimant's most recent examination in September 2020, which does not reflect the level of severity found in [F]NP-C Searle's last examination performed back in April 2019, *and what she presumably based her limitations on*.") (emphasis added).

**REPORT AND RECOMMENDATION - 11**

have improved over time, they never fully resolved; and (ii) the ALJ rejected not only FNP-C Searle's opinions, but also the opinions of both State agency reviewing physicians, rendering the basis for her eventual RFC unclear. Pl.'s Brief at 11 (Dkt. 12). Plaintiff maintains that the ALJ had a duty to instead obtain an additional opinion from a medical expert to address these shortcomings. *Id*. Plaintiff is incorrect.

It is well-settled that it is the ALJ's responsibility to "translat[e] and incorporate[e] [the] clinical findings into a succinct RFC." *Rounds v. Comm'r of Soc. Sec.*, 807 F.3d 996, 1006 (9th Cir. 2015); *see also Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001) ("It is clear that it is the responsibility of the ALJ, not the claimant's physician, to determine [RFC]."). It is also well-settled that it is the responsibility of the ALJ to determine the credibility of the medical evidence. *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002); *see also Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982) (an ALJ "is entitled to draw inferences logically flowing from the evidence" and "need not substitute the judgment of expert witnesses for his own").

To make these determinations, an ALJ must, by necessity, analyze, assess, and draw conclusions from the available medical evidence. Where these inferences are unreasonable or overly speculative, they may be subject to challenge on appeal. This does not mean, however, that all inferences are suspect or, stated differently, that all of an ALJ's findings regarding a claimant's abilities or the reliability of a medical opinion must be backed by the opinion testimony of another medical expert to be valid. *Farlow v. Kijakazi*, 53 F.4th 485, 488 (9th Cir. 2022) ("ALJs are, at some level, capable of independently reviewing and forming conclusions about medical evidence to discharge their statutory duty to determine whether a claimant is disabled and cannot work."); *see also Patterson v. Saul*, 812 F.App'x 506, 508 (9th Cir. 2020) ("Patterson's contention that the ALJ was 'playing doctor' ignores that consideration of medical records is part and parcel of what an ALJ is supposed to do.").

**REPORT AND RECOMMENDATION - 12**

With this in mind, the ALJ never equated Plaintiff's improvement between April 2019 and September 2020 with a resolution of his symptoms. Indeed, the ALJ found that Plaintiff suffers from several severe impairments at step two of the sequential process. Based on the medical evidence, the ALJ incorporated the significant limitations resulting therefrom into an RFC at step five of the sequential process. And relatedly, the ALJ did not reject all of the State agency reviewing physicians' opinions. In fact, she found them largely persuasive. She rejected only those portions of the opinions that were contradicted by the medical record, and actually *included additional limitations* that were likewise supported by the medical record. AR 22-23. In this setting, there was no reason for the ALJ to further develop the record by obtaining an additional medical opinion. *See Mayes v. Massanari*, 276 F.3d 453, 459 (9th Cir. 2001) ("The ALJ's duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation.").

At bottom, the ALJ adequately explained her findings concerning FNP-C Searle's opinions. Plaintiff may believe that the ALJ did not give these opinions the weight they deserved, but the ALJ rationally considered them against the surrounding medical record and decided that they lacked supportability and consistency under the regulations. Because the evidence can reasonably support the ALJ's conclusion in this respect, the Court will not substitute its judgment for that of the ALJ's – even if the Court were to have a different view. *Richardson*, 402 U.S. at 401. Accordingly, the ALJ's evaluation of NP-C Searle's opinions is supported by substantial evidence.

Reversal is not warranted on this issue.

2. The ALJ Reasonably Considered Plaintiff's Symptom Testimony

Plaintiff next argues that the ALJ erred when considering his testimony regarding the severity of his symptoms. Pl.'s Brief at 13-16 (Dkt. 12). According to Plaintiff's testimony and

**REPORT AND RECOMMENDATION - 13**

written statements, he cannot work due to his psoriatic arthritis, ankylosing spondylitis, inflammatory bowel disease, ventricular arrhythmia, bilateral shoulder surgeries, folliculitis, and hypertension. AR 19 (citing AR 228). Plaintiff reports that, due to these impairments, he has continuous joint pain and arthritic flares throughout his body; sores on his arms that do not heal; fatigue; shortness of breath; extreme chest discomfort; hip, back, knee, wrist, and shoulder pain; trouble sitting for long periods of time; swelling, cracking, and splitting in his hands and fingers; trouble dressing, showering, and generally caring for himself; blurred vision; and stomach issues. AR 19-20 (citing AR 259, 266-285, 315-317); *see also* AR 43-50 (Plaintiff's testimony about his limitations). He also alleges deteriorating mental health, short memory, difficulty concentrating, and increased bouts of anger. AR 20 (citing AR 259, 280).

As the trier-of-fact, the ALJ is in the best position to make credibility determinations and, for this reason, her determinations are entitled to great weight. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). In evaluating a claimant's subjective symptom testimony, the ALJ engages in a two-step analysis. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Id*. at 1036 (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991)). Second, if such objective medical evidence exists, and the ALJ has not determined that the claimant is malingering, the ALJ must provide clear and convincing reasons before rejecting the claimant's testimony regarding the severity of the claimant's symptoms. *Id*.

Generalized findings will not satisfy this standard. The reasons an ALJ provides for rejecting a claimant's symptom testimony "must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony regarding pain." *Brown-Hunter v. Colvin*, 806

F.3d 487, 493 (9th Cir. 2015) (quoting *Bunnell*, 947 F.2d at 345-46).  This requires that the ALJ "identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id*. at 493 (quoting *Reddick*, 157 F.3d at 722).  If there is substantial evidence, courts will not engage in second-guessing.  *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002).  Even when the evidence can support either outcome, a court may not substitute its judgment for that of the ALJ.  *Tackett*, 180 F.3d at 1098.

      The ALJ's decision satisfies these standards.  Before rejecting Plaintiff's symptom testimony, the ALJ provided valid, individualized reasons for finding Plaintiff's claims about his pain and his mental health unconvincing.

      Beginning with Plaintiff's mental health, the ALJ concluded that Plaintiff does not have any medically determinable mental impairments.  AR 17, 21, 24.  Notably, Plaintiff raises no distinct challenge to this aspect of the ALJ's decision.  In other words, while Plaintiff attacks the credibility findings as they relate to his alleged pain and associated limitations, he does not specifically contest the ALJ's conclusion that his mental health symptoms were not independently incapacitating and that Plaintiff's testimony to the contrary was overstated.

      Turning to Plaintiff's alleged pain, the ALJ found that his impairments could reasonably be expected to cause the symptoms alleged, but that his statements concerning the intensity, persistence, and limiting effects of those symptoms were not entirely consistent with the medical evidence and other evidence in the record.  AR 24-27.  The ALJ's justification in this regard amounts to clear and convincing reasons for questioning Plaintiff's symptom testimony.

      First, the ALJ concluded that Plaintiff's claims do not align with the medical record.  AR 24-25 ("However, I find significant inconsistencies between the medical evidence and the degree and persistence of several of the alleged symptoms and medication side effects . . . .  Instead, I find the additional evidence below supports limitations no greater than the ones I included in the

**REPORT AND RECOMMENDATION - 15**

[RFC] above.  For example: . . . .").  Whereas Plaintiff claims that his pain and mobility issues are altogether debilitating, his medical records do not reflect the same level of restriction.  For example, as discussed above, the ALJ extensively referenced Dr. Scoville's unremarkable findings as of September 2020 – in particular, how Plaintiff (i) exhibited full bilateral shoulder, elbow, and knee range of motion; (ii) non-tender hands and wrists will fully closed fist formation; and (iii) only mild-to-moderate left hip, pelvis, low back discomfort.  AR 25-26 (citing AR 542-543 (additionally describing only "superficial cracking of skin of selective fingertips" and "normal vertebral alignment" with only mildly tender lower lumbar spine and SI joints)).  "Contraindication with the medical record is a sufficient basis for rejecting the claimant's subjective testimony."  *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008).

So too are the scant objective findings relative to Plaintiff's psoriatic arthritis and PVC symptoms over the course of time.  AR 27 (ALJ stating: "While the medical evidence shows multiple and ongoing changes in the claimant's psoriatic arthritis treatment during the period at issue, it also shows they occur far less frequently than every eight weeks.  As he has not returned to his PVC treatment provider since January 2020, the record supports minimal changes in his PVC treatment since his last visit.").  An ALJ may rely on a lack of corroborative medical evidence to discount a claimant's subjective allegations so long as it is not the sole basis for doing so.  *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005) ("Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis.').

Nevertheless, the ALJ considered Plaintiff's psoriatic arthritis and PVC to be severe impairments at step two of the sequential process and considered their functional limitations as part of Plaintiff's RFC at step five of the sequential process.  To that end, the ALJ rejected

**REPORT AND RECOMMENDATION - 16**

certain of the State agency reviewing physicians' recommendations. Instead, he found that the record as a whole supports more restrictive standing/walking, ladder/rope/scaffold climbing, vibration exposure, and hazards exposure limitations, as well as an additional off-task limitation. AR 22-23.

Second, Plaintiff's reports to his providers did not neatly track his testimony before the ALJ. The ALJ cited to these inconsistences as an additional reason to discount Plaintiff's testimony. AR 24-26. For example, Plaintiff testified that he has to be near a restroom at all times because his "extreme" gastrointestinal issues result in approximately 10-11 "urgent" bowel movements a day. AR 50. But Plaintiff actually told his providers that he experiences 3-8 bowel movements a day alongside an improvement with medication. AR 24 (citing AR 491). The ALJ included an 8-9% off-task limitation within Plaintiff's RFC in light of this more modest estimation. AR 24.

Similarly, Plaintiff testified that his heart medication causes blurred vision "just about every day" for "probably 50% of the time," making it impossible for him to drive or read anything in front of him. AR 49. But Plaintiff only reported episodes of blurry vision in May and November of 2018 due to certain PVC medication (while still working and before his alleged onset date). AR 26 (citing AR 427, 430). Thereafter, Plaintiff's vision consistently improved once he stopped taking that medication such that, in December 2020, Plaintiff denied any changes in his vision. *Id*. (citing AR 441, 452, 535, 537).

The ALJ fairly considered these inconsistencies as well when discounting Plaintiff's testimony. *See* Social Security Ruling (SSR) 16-3p, *available at* 2017 WL 5180304, at *8 ("In determining whether an individual's symptoms will reduce his or her corresponding capacities to perform work-related activities . . ., we will consider the consistency of the individual's own statements. To do so, we will compare statements an individual makes in connection with the

**REPORT AND RECOMMENDATION - 17**

individual's claim for disability benefits with any existing statements the individual made under other circumstances.").

Together, these reasons amount to clear and convincing explanations as to why the ALJ found Plaintiff's testimony not entirely credible. Critically, the Court's role is not to decide whether Plaintiff is disabled under the applicable statutes and regulations, or even whether he suffers from chronic, disabling limitations. In assessing Plaintiff's credibility, the ALJ was not focused on whether Plaintiff had impairments that impacted his ability to perform work-related activities, but on whether these impairments altogether prevented him from engaging in any full-time work. *Molina v. Astrue*, 674 F.3d 1104, 1113 (9th Cir. 2012) ("Even where . . . activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of *totally debilitating* impairment.") (emphasis added). It is the reasonableness of *these* findings that the Court must review on appeal.

On those points, Plaintiff identifies other evidence in support of his position. Pl.'s Brief at 14-15 (Dkt. 12); Pl.'s Reply at 2-3 (Dkt. 14). Even though this alleged conflicting evidence may not have been given the weight that Plaintiff would have preferred, the ALJ's decision to question his subjective symptoms is supported by clear and convincing reasons. The Court uses – as it must – that standard. Accordingly, the ALJ will not be second-guessed given the justifications provided. *Batson*, 359 F.3d at 1193 ("[T]he Commissioner's findings are upheld if supported by inferences reasonably drawn from the record, and if evidence exists to support more than one rational interpretation, we must defer to the Commissioner's decision.").

Reversal is not warranted on this issue.

## IV.   CONCLUSION

The ALJ, as fact-finder, must weigh the evidence, draw inferences from facts, and determine credibility. If the evidence is susceptible to more than one rational interpretation, one

**REPORT AND RECOMMENDATION - 18**

of which is the ALJ's, the Court may not substitute its interpretation for that of the ALJ. The ALJ has provided reasonable and rational support for her well-formed conclusions, even if such evidence is susceptible to a different interpretation. Accordingly, the ALJ's decisions as to Plaintiff's disability claim were based upon proper legal standards and supported by substantial evidence. The Commissioner's decision is affirmed and Plaintiff's Petition for Review should be denied.

## V. RECOMMNEDATION

Based on the foregoing, IT IS HEREBY RECOMMENDED that the decision of the Commissioner be AFFIRMED, that Plaintiff's Petition for Review (Dkt. 1) be DENIED, and this action be DISMISSED in its entirety, with prejudice.

Pursuant to District of Idaho Local Civil Rule 72.1(b)(2), a party objecting to a Magistrate Judge's recommended disposition "must serve and file specific, written objections, not to exceed twenty (20) pages . . . within fourteen (14) days . . ., unless the magistrate or district judge sets a different time period." Additionally, the other party "may serve and file a response, not to exceed twenty (20) pages, to another party's objections within fourteen (14) days after being served with a copy thereof."

DATED: August 18, 2023

_____
Honorable Raymond E. Patricco
Chief U.S. Magistrate Judge

**REPORT AND RECOMMENDATION - 19**